v. Care Pura Vida Trust v. Initram Incorporated at all. We'll hear from Mr. Patterson. You may proceed when you're ready. And then the first thing you can do is tell us why we have an exhibit notebook and whether these items are already in the record or not. Yes, ma'am, and good morning, and may it please the Court, Johnnie Patterson, Walker and Patterson on behalf of Mr. Fugedi, Fugedi Round 2, and I guess congratulations are in order for Judge Engelhardt is here for Round 2 and was here for Round 1. So, the notebook has really just some reference material. Everything's in the record that is before you in the notebook. Did you provide this to them before today? Yes, ma'am. Well, today, but everything here is in the record. Okay. Okay. Let's proceed. Thank you, Your Honor. So, Fugedi 1 dealt with the transfer of some property in Texas, and the deed, the grantee, trust, trustees, and we're here on a similarly compelling issue, subject matter jurisdiction now, three and a half years later. We were here three and a half years ago, and I don't know if you recall, but this has been a long time. This case has been pending for five years. This case involves a piece of partially improved real property that's sitting. Mr. Fugedi doesn't have access to this property. He purchased it five years ago, and it's sitting. It's being tagged. It's being noticed, but we don't have access, and we're still litigating the purchase. The subject matter jurisdiction that we're now dealing with has occurred after remand from Fugedi 1, in which this court said, it looks like we have subject matter jurisdiction, but we're going to send it back and see. So now, three and a half years later, we do have a decision. The decision is wrong, and I'll just say litigation, especially protracted litigation, over whether a case is in the right court is a waste of time and a waste of resources, and that's what we're doing. Those aren't my words, by the way. It's my sentiment, but they're not my words. Those are Justice Powell's words out of Navarro in footnote 13, right? Same sentiment, right? And I think the point is subject matter jurisdiction should be simple. We should have bright lines. We should have clear rules. We shouldn't have protracted evidentiary hearings and appeals over a real party of interest, but that's what we have here, and so we're going to deal with it. After remand, we went back to district court, and this is important, not really to the merits, but yes to the merits. We went back, and Magistrate Judge Edison finally set us for a hearing on subject matter jurisdiction in 1359 and whether there was collusive creation of diversity jurisdiction. This is important because there were two orders that really came out and related to this hearing. One was his preliminary order telling us what he was going to do, but importantly in there, he also told us the things he had found and what he believes. The Fujetti was a Michigan citizen. There was a valid trust. Fujetti was the trustee. The property was worth more than $75,000. The property had been validly deeded to Fujetti, which is what this court found, right? And he incorporated all those findings in his memorandum opinion and order after the evidentiary hearing. So those are all findings. We know those things now, and those are important, but also, as the court may recall, the remand referenced allegations that were made in the first appeal, randomly. I think they were referred to as whistleblower evidence, allegations of fraud, and the court said in its opinion, we're not going to address this new evidence, so the district court hasn't had a chance to address it, so that's the other part of the remand, this fraud, the trust was fraudulent, created fraud, recordings, transcripts, thousands of pages, tens of thousands of pages of this alleged evidence. And the court set, so on remand, the court set this evidentiary hearing for subject matter jurisdiction. What did the Appellees bring as evidence at that hearing of this fraud? Tens of thousands of pages they covered up courts with. They got zero evidence. Not one document was admitted. Not one witness was called.  And in the exhibit book that you have, if you look in tab two, is the appellant's exhibit list. This is the only evidence admitted at that hearing. That's it. This is my exhibit list, and each of these exhibits were attached, and each of the exhibits are in the record following this page, 15664. This is it. This is the universe. After all of the noise of fraud and fictitious people and straw men, they brought zero evidence. Sir, counsel, I mean, I appreciate that judicial resources are important. I mean, we didn't have to have oral argument in this case, but we decided to. And the fact that the district court held a hearing on this is no surprise to me because I thought the panel essentially invited him to do so. Correct. I wasn't on the panel, but, you know, the panel invited him to do so. Right. So it seems to me maybe your better tack is to explain, because I read the magistrate's report, to explain why the magistrate was wrong in any of the findings that he made with respect to the straw trustee. Right. And so let me clarify. I wasn't suggesting today's a waste of time. My suggestion was that the real party and interest in subject matter jurisdictions should be made clear with simple rules. That was my point. Sure, it can be. Right. But we do have 1359. That's right. The question here is does it apply? Does it apply? Correct. Number one, you're not going to find a case that applies 1359 to a trust that we could find. The court may confine more resources. We couldn't identify a single case that found a trust applicable. Why is reading the text, why would I read the text and say that a trust couldn't be one of the ways of manufacturing collusively manufacturing diversity jurisdiction? Why would I read that section and come away with it? So let's go through the examples. 1359 has historically been used with respect to assignments and representative capacity cases. That's it. Why doesn't a trust apply? Well, let's walk through it. 1359 says the assignment is collusive. Ignore the assignment. Right. That's easy. You have two parties. It goes back to the other party. A representative capacity case. Ignore the appointment. Right. You go back to the real party and interest. However, when you're involved in a trust, a traditional trust, what are you ignoring? Are you ignoring the trust? Okay. Let's ignore the trust. What are you left with? Well, you're still left with Mr. Pugetti as the real party and interest because property is in his name. And in any other case, the real party and interest is still going to be that individual as a real party. A human is, I think, just as Sotomayor in A Miracle talks about. The human, the people, the real people. Let me go back, Counsel. Is there anything in Section 1359, in the text of 1359, that would indicate to us in considering it that it should not apply to a trust relationship? Well, number one— You cited some examples of things that it would apply to, and maybe there's some type of customary practice. But I'm asking specifically about the text or where it appears in the statutory scheme that would seem to preclude application to a trust. So the text, I think, precludes a trust because it speaks of parties, the creation of parties. It doesn't talk about non-parties like Cook. It doesn't talk about co-trustees. It talks about parties. Was that party created collusively or as a device to create diversity? How is a trustee created? It's a relationship. It's not a thing like an appointment. But if a trustee is a party to the litigation, a nominal party, such as in this case, why would we want to disregard that? I understand you seem to be focusing on the word party. But the trustee in this case is a party, correct? The trustee is the party, is the only party, right? He has title to this property. We've asked for a determination of that title. So he's the only person in the universe that could ever ask for this relief. Avoid—ignore the trust. He's still the title holder, as Fujeti No. 1 said, right? He's the person, whether it says trustee or not. Whether he's trustee or not, he owns the property. And so where do you get and what do you avoid? And in addition to that, if you go with the magistrate judge's analysis, you're going to start checking motive? Well, it says by assignment or otherwise, and the otherwise seems to be where we are. We're in otherwise territory right now, and that might or might not, depending on what we decide, include a trust if there is one that is not a bona fide absolute trust. Right, and otherwise is the land we are in. You are correct. I couldn't find cases that expanded this otherwise language beyond assignments and representative capacities. And again, I'm not making the representation that are out there, but we looked at a lot of cases. I mean, the Supreme Court anticipated that there could be sham transactions by its inclusion of the term sham transactions. Navarro does use that language, Chief Judge. That's correct. So this is not some new thing the magistrate judge created. The Supreme Court has this in its language. This comes from the Supreme Court. It hasn't been done in 200 years that I know of, right? But yes, Navarro uses that language, but he uses it in the negative, in finding the real party in interest. And what did the lower court find? The lower court found that Fugetti is a valid trustee. That's a finding, right? That the trust is in writing, that it grants him powers. Those are all step-by-step Navarro and Cook, right? Those are all elements. Where did he come up? The test that he used, Bianca, from this court, is no longer good law. I mean, this court in Jones said, 84 is Bianca, 1984. 88, 1332 is amended, effective 1989. And the test is no longer around. Jones said that after 1989. So you're saying that Bianca's factors are no longer good law. That's what she said. And in what case are you citing for that proposition? Jones, let me get it for you. Jones v. Petty Ray, geophysical geosource. It's 954, Fed 2nd, 1061. And the language is as follows. Prior to the amendment, speaking of 1332C, the rule in the circuit was that an administratix citizenship will govern the diversity inquiry unless the administratix was selected to manufacture diversity. And so it was a reverse. Someone was trying to argue that Bianca factors applied, and the court said, yeah, that's not the rule anymore. 1332 now applies to basically all representative capacity cases by just referring to the representative entity or person. So Bianca's not even around anymore. At least that's our understanding. Do you want to address the 7th and the 3rd Circuit cases that are cited by the magistrate judge or not? Which one in particular? Reinhart? Reinhart. He relied on the Reinhart test and the Bianca test, and then he came up with some other assignment case elements. I mean, you can read through the Bianca elements, and they all talk about the represented person, right? Fugetti doesn't represent anyone. He is the real person, the real party, right? And then the assignment cases, which is Reinhart, speak about the consideration for the transfer, right? There's no assignment here. Greedy v. Bank of New York Mellon and McSparran v. Weist. And I don't think that... Cited in the opinion. I will. I don't think he cited those for the elements, and I don't recall that second one, Judge, and I apologize. We treat an assignment as collusive when its function is to shift litigation from state to federal court. Right, and where's the assignment in this case? There is no assignment anywhere. That Mr. Fugetti is a straw fiduciary to try to avoid liabilities created in the property in state court and to accomplish also getting into federal court. There are no liabilities in state court, Judge. That is the allegation. That's the allegation. I'm trying to, you know, that the steadfast parties in the other state litigation and all of that, and that it's all related to this. And that the district, I mean, the judge goes through this. I'm not saying it's true or not. I'm saying this is what the... And here's the problem, very quickly. I know my time is up, but here's the problem with that. Subject matter jurisdiction is determined when? At the moment the petition is filed. Eighty percent of those things had not occurred. For example, there was no judgment. There was no pending litigation against the property. There was no judgment. There was no affidavit of poverty. There was no appeal. There was no lis pendens. None of those things occurred. I apologize. Lis pendens did occur at the time of the petition, but after the purchase of the property. In fact, the timing, I'm not sure. But a lot of those allegations that the judge goes through were post-petition, post-complaint facts. The payments on the note, how is that applicable? How does that have anything to do with jurisdiction, right? And plus, he's talking about now five years after the complaint when the property was bought around the time of the filing of the lawsuit. So how is any of that relevant, right? He goes off on a tangent. He's buying into steadfast argument of, oh, this is a conspiracy. Look at all these bad facts. Well, they brought no evidence of any bad facts, but the judge apparently bought into some of them because he just worked so hard on all these post-petition findings, post-complaint findings to support these supposed bad acts. I think we have your argument. I'm sorry? We have your argument, and you've saved time for rebuttal, sir. Thank you. Thank you. We'll now hear from Mr. Fender. Good morning, and may it please the Court. I disagree with something off the top. I think Bianca still does apply to this case. Mr. Fender, before we get too far into your argument, we received, it looks like it was filed on Thursday of last week, what purports to be a 28-J letter. Yes, Your Honor. It was sent by you, is that correct? Yes, Your Honor. All right. Did you look at Rule 28-J? I did. All right. This letter purports to offer us 12 cases, which you characterize as controlling authorities, but there's only one case that's even in the last five years, and it was prior to the briefing in this case, I believe. Why were these cases not, if they're controlling authority, why were they not referenced in the brief? It seems to suggest, from our point of view, and I hope incorrectly suggests, that the briefing wasn't well-researched to begin with. Don't you understand that that would be the impression we would have when we find 12 new controlling cases that somehow escaped your notice in the briefing? Well, I didn't write the briefing. Well, you're here. You're here, so let's not say that. And so I would just say that in preparing for oral argument, I came across these cases. I thought that they were important for the court to see. I do think that they're a controlling authority, and so that's why I brought it to the court. Okay, well, let me be clear, and I'm going to leave it up to my colleagues here as to whether this should be stricken or not. It's clearly an improper use of 28J. 28J, henceforth, when you practice here, is for breaking news or current events, things that happen after briefing closes, whether it's something that happened in this case that we need to know about, or whether it's a new case, either from the Fifth Circuit, which might or may not be controlling, or from another circuit that might be pertinent to the case and be persuasive, or even better, a Supreme Court opinion that might have some bearing on the case. That's what 28J is for. It's not a chance for a do-over or to suddenly do research that you think is now pertinent that could have been in the original brief. I understand. I'm taking up your time here, but it's a very important thing. When we get letters like this from counsel, it's rather distressing, and as I said, it suggests that maybe the briefing was done haphazardly and that the serious research occurred in connection with oral argument preparation. I apologize, Your Honor. I misunderstood the purpose of 28J, and I apologize. Okay. Let's get on with your argument. I agree with appellant counsel that this is not an assignment case. It's an appointment case. And 13... It doesn't matter under the text of this statute, right? It says by assignment or otherwise. That's correct. It doesn't have to be an assignment. And the Seventh Circuit talks about assignment of a trust, but in a colloquial sense, not in some strict legal sense, I think, that property is being moved from some owner to another owner with respect to a trust. It's a vehicle. Yes, Your Honor. I guess I bring that up because the importance is that appointment versus assignment, there are different tests that are applied to the facts of the case. So... Maybe, but the point is that what we're concerned about is whether a vehicle can be used to collusively create diversity of jurisdiction. That's correct. And the magistrate... That's the entire premise of the magistrate's report is that 1359 applies here to the trust.  And I agree that 1359 applies to trust. And the appointment of the trust... Your argument is it does, and the other side says, well, there's no case that says that. Well, we see references to trusts in the connection with 1359, both in the Supreme Court and in other circuits. So I'm just trying to understand what is the idea of saying that it shouldn't apply? Because the text, I don't see from the text a clue that it absolutely doesn't apply. I would say that the text includes a trust, because it says by assignment or otherwise, which you just pointed out. And I think or otherwise includes this exact scenario. We know that 1359 applies to the appointment of a fiduciary. In Gross v. Hoagland, the Sixth Circuit said in the context of Section 1359 the plaintiff would show that the primary purpose for the appointment of the fiduciary is to not manufacture diversity of citizenship. And in McSparran, which was brought up earlier, the Third Circuit said, while the statute does not ban the appointment of non-resident fiduciaries, the artificial selection of a straw representative who has no duty or function except to offer the use of his citizenship, create diversity, and contemplate litigation is a violation of its provisions. Was Mr. Fugetti under oath in this hearing? I believe that he was. I believe that he was asked to testify and that he was under oath when he answered the court's questions. When they say there's no evidence, there's testimony in examination by the judge in cross and direct examination of Mr. Fugetti himself.  So there's not just documents. It's, why are you doing this? What is your involvement? What is your knowledge? Oh, I don't know much. That's the perception of the district court, of why he's there and what he's doing, etc. And the district court actually... Without a straight judge who is sitting by designation of the matter of... Yes, Your Honor. And the district court actually says in its opinion that everything that it's relying on in coming to its determination was either evidence submitted by the defendants or, pardon me, submitted by Fugetti, things testified to by Fugetti, or things referenced by Fugetti in his pleadings. So there's apparently some tapes and some transcripts that were hotly contested during the course of this proceeding. None of that came into the court's determination of the application of 1359 to the facts of this case. So the idea that we didn't present any evidence, well, the district court specifically points out what evidence it relied on, and it was their evidence to come to its determination. Counsel, is there some sort of threshold that needs to be met or some type of triggering mechanism to get beyond an absolute transfer, an absolute transfer in the creation of a trust for the court to be able to look to motive and evidence of an improper motive? What is the... Where is the starting point that allows the court to do that? What I would say to that, Your Honor, is that when there is an appointment of a trustee and 1359 is alleged by the counterparty, then the requirement becomes that the person claiming diversity of jurisdiction has to prove by proponents of the evidence that they have, in fact, jurisdictional facts to allow them to be in that court. So it's the regular concept of the party invoking jurisdiction has the burden of establishment. Correct. How can the... I mean, I guess I should ask the other side. Is it true that Mr. Fugetti did not know how the attorneys of the trust are being paid? That's correct. That's what the district court found. And the district court found that Mr. Fugetti believed that... Wouldn't that be part of his... That he would be directing and hiring and... Correct. So the district court found that Mr. Fugetti... Actually, I think what the district court specifically says was that Mr. Fugetti just did what his lawyers told him to do. And that was the finding of the court. Based on the fact that he didn't know how the lawyers were paid, that he didn't know whether or not the note was secured or not, the fact that he didn't understand why the note was being paid on, and that he was relying on his counsel, basically, for not paying the note, which would be an obligation of the trustee. He didn't know any of these factors. Could you see an obligation to keep up with the debts and payments and things?   I'm sorry, did you have some further points you want to make? I would just say that the district court correctly applied the Bianca factors in this case. I think Bianca is still good case law vis-à-vis a trustee. The amendment that was referenced earlier was an amendment into the statutes dealing with administrators, but it didn't rule out trustees having these particular factors applied to them in the context of 1359. So I think that the Bianca factors were correctly applied. And importantly, this is a de novo hearing, but the factual findings of the district court are reviewed to be clearly erroneous. And I don't think that there's been any real factual attack on the findings of the district court here. So those are not clearly erroneous. I think the Bianca factors were correctly applied, and I think that the district court absolutely got this case correct. If there are no other questions from the panel, then I will yield the balance of my time. Thank you. So where's the appointment in this case? If we're going to go down the appointment analysis, there's no appointment. And we're now going to challenge the motive of anyone who wants to appoint a trustee for any purpose. Is it your position that it doesn't matter whether Mr. Fugate is a straw trustee or not? Number one, I'm not sure what a straw trustee is, but it doesn't. Someone who doesn't know what's going on but is the purported trustee. That would be what I think is meant by the term. Right. And so, quite frankly, no. He owns the property. Title is in his name. So you're saying it doesn't matter at all whether he's just put up there so that they can use his foreign diversity. Well, the result of that, Chief Judge, the result of that is that you're telling Mr. Fugate, you own this property, you're a citizen of Michigan, but we're going to make it a policy. You may not utilize our federal courts because we don't think you have the right amount of knowledge or the right education or your motives are not pure. So you either get rid of the property or go to state court. But you don't know what's going on and you were just put up there by others who were controlling everything. That's not the same thing. With respect, that's not the evidence. Well, I mean, so I guess the purposes of the finding here are limited to creation of diversity jurisdiction. I guess the district court's not saying anything about the trust writ large. But I guess my question is, and I don't know the answer to this, so maybe I shouldn't ask it, but under Texas law when one has a trust, are there mechanisms for others to attack the trust, even the government, I don't know, the tax authority, something to go at the trust and say, hey, no, that's not a valid trust. I can't imagine all the reasons. Is that a thing in Texas law? And I'll tell you, I'm primarily a bankruptcy lawyer. So I can tell you from my perspective, there are certain things, like in a bankruptcy case, for example, if the trustee and the beneficiary are the same people, that's some basis to attack the validity of the trust. It's not real. Beyond that, I'm sure there are. I'm not a probate or a state lawyer. I assume there would be consequences under state law, maybe tax law for not following the formalities of the trust. Yes. And so state law regulates that. So we're going to have a magistrate here in Texas say, Michigan, you're not doing your job. But to go back to Chief Judge's points, this knowledge argument that's put in the opinion, quite frankly, is just not the evidence. Mr. Pugetti testified. It was an odd hearing. The judge called the witness. It was his witness. And he did the direct. And quite frankly, it was a prepared direct right out of Bianca. That was his purpose. And I think it's obvious that was his purpose going in. Were you objecting to that? I did. No, here. I don't see that that's the basis of the appeal. No, it's not. It's not. A judge is authorized to call a witness under the federal rules. Did we object to questions? Yes, we objected to. But that's not on appeal. No, ma'am. But the point being is the evidence that was provided, the evidence that supported Mr. Pugetti and the trust, if you read back through his opinion, was discounted by the magistrate. Every good piece of evidence or testimony was, well, that's ridiculous. He couldn't really believe that. Well, I just don't believe that. Well, then wouldn't the appeal then be that the district court made actually clearly erroneous findings? Wouldn't that be the subject of the appeal rather than you're not, there's no such thing as checking behind diversity of jurisdiction in the trust context? I mean, that's a totally different argument. It's totally different. And yes, and it's not done because, quite frankly, it's too difficult of a standard. That's just being frank. But are you attacking him? Forgive me if I misunderstood. Are you attacking the fact findings made by the district judge on appeal? I am. I mean, this is a de novo review. Well, that's an open question. But, you know. Under that basis, yes. On that basis, yes. If we disagree with you about viability of Bianchi, what result here? The result is the same. Because I think you go back that Bianca is an appointment case. We don't have an appointment. Fugetti wasn't appointed. This is a relationship that he has with an entity as the beneficiary. And he's transacted business in his own name, in his relationship capacity, but in his own name. And now the court is saying, and it doesn't make sense. And I think that's why there aren't cases out there under 1359. There are other ways to do it. If they're going to attack the trust, if it's fraudulent, if he's committed some crime, if he's acting beyond his capacity. Those are state law questions, and they go that way. But to just say, oh, look to the motive. Are we going to go to derivative plaintiffs next and say, we need to know why. How did they acquire their interest and for what purpose? Because you have to remember, anyone that shows up on the doorstep of a federal courthouse has the motive of, I want to be in federal court. Because 99.9% of all claims can go to state court. That's certainly not nefarious on its own to be in federal court. Correct. That's the point you're making. But my point is, there's always a motive to get to federal court when you're in federal court. How far will you go and what will you do to do that? Where do you draw the line if you're going to go to motive? The representative capacity cases are easy, right? Relatively easy. I'm not going to say they're easy, but they're more obvious. But to say a business transaction and then to look at the business transaction as an HD net out of the Northern District of Texas and then look at the motive of the business. You need to wrap it up, sir. Your time is up. Thank you, Your Honor, and I didn't see that. I apologize. Thank you. Thank you. Thank you.